FILED ___ LODGED
___ RECEIVED ___ COPY

APR 19 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ M DEPUTY

Michael D. Calmese
3046 N. 32nd Street #321
Phoenix, AZ 85018
(602)954-9518

Attorney Pro Se

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| MICHAEL D. CALMESE, an individual | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | NUMBER_ CIV'10 0857 PHX-JWS |
| | ) | |
| VS. | ) | |
| | ) | |
| TOYOTA USA INC., | ) | |
| and AMCI MARKETING, INC. | ) | |
| | ) | |
| Defendants'. | ) | |

## COMPLAINT FOR DAMAGES, BREACH OF AGREEMENT, DECLARATORY, AND INJUNCTIVE RELIEF AND FOR MISAPPROPRIATION OF "PROVE IT"

TO THE HONORABLE JUDGE OF SAID COURT:

For cause of action upon information and belief, Michael D. Calmese as Plaintiff in the

above-styled cause, alleges and complains of Toyota Motor Sales USA, Inc., (herein

"TOYOTA"), and AMCI Marketing, Inc.,  (herein "AMCI") as follows:

### I.    NATURE OF SUIT

1. Calmese owns a trademark for the mark PROVE IT!, registered with the United

    States Patent Trademark Office Registration No. 2,202,454.

2. Calmese registered his trademark with the United States Patent Trademark Office

(hereafter the "USPTO"), back in 1998 and soon after contacted companies like NIKE and REEBOK regarding his PROVE IT! trademark.  CBS Sports even did their due diligence and contacted the rightful owner of the trademark "PROVE IT!" back in 1995 to avoid a potential conflict.  Attached as **Exhibit A**, is a true and accurate copy the CBS Sports letter confirming TOYOTA and AMCI should have done some kind of trademark research prior to using the "PROVE IT" trademark in their "biggest" launch ever!  AMCI adimits that its sole reason for entering into an agreement with Calmese, on behalf of TOYOTA,  was to avoid prosecution and buy peace for a specific amount of time.  On April 2, 2007, Toyota's Elizabeth Gibson was the first person contacted by Plaintiff regarding this matter.  Attached as **Exhibit A1,** is a true and accurate copy of TOYOTA'S first ever response to Calmese's allegations proving Elizabeth Gibson and Toyota were and are fully aware of this matter. Simply put, Calmese and his PROVE IT! business are well-established in the market place and have been doing business with professional organizations including professional athletes since 1998!

3. Calmese entered into an Agreement with Defendants' AMCI and TOYOTA in April of 2007 to utilize Calmese's "PROVE IT!" trademark in the "TOYOTA TUNDAR PROVE IT" campaign (hereafter " PROVE IT TOUR").

4. Calmese developed and nurtured "PROVE IT!" for over 12 years and was and is always in a position to reap substantial financial rewards in connection with licensing agreements or agreements like the one with Defendants' TOYOTA and AMCI.

5. Attached as **Exhibits X, Y and Z** are pictures of NFL and NBA celeberties endorsing the PROVE IT! Sportswear business and products.  You can even see

   Eastbay Inc., use of the mark PROVE IT prior to their settlement with Calmese attached as **Exhibit W**.

6. On or about September 2007, the TOYOTA "PROVE IT" advertising kicked off with the NFL Super Bowl, in Glendale Arizona, which also saw spots for Ford's new Super Duty pickup and Chevrolet's Silverado.  This is the same Super Bowl Plaintiff sponsored the NFL Torry Holt "HOLT BROTHERS" Super Bowl flag football game.  Attached as **Exhibits K, M and N** are true and accurate pictures from the Super Bowl even sponsored by Calmese with his "PROVE IT!" mark in 2007.

7. On February 2, 2007 TOYOTA's truck loyalty figures were below approximately 40 percent.

8. On or about February 2007, Jim Farley, TOYOTA's Division group vice president of marketing, said at the national press briefing on the TUNDRA marketing held in Detroit in December of 2006, "We're the challenger," he said, "We're not assuming anything.  We have a chip on our shoulder, and we're going after this business. We're starting from scratch."

9. Plaintiff contends Defendants' did go after this business by using Calmese's trademark initially without Calmese's authorization.

10. Calmese contends that, Defendants' plans were so big Defendants' had to logically conduct a trademark search on the phrase "PROVE IT".

3

11. Defendants' will agree ignorance is no excuse for breaking the law or infringing ones federal trademark.

12. On information and belief it would not be logical for a company the size of TOYOTA or AMCI not to do their due diligence before using any trademark or launching a multi-million dollar campaign titled "PROVE IT!".

13. As anyone would have anticipated, the consuming public was confused as to the source and origin of Defendants' PROVE IT TOUR.

    Plaintiff contends there have been numerous reports from consumers that they believed Calmese and both Defendants' TOYOTA and AMCI had an affiliation or connection as a direct result of seeing or hearing about the misleading advertisements and use of the mark PROVE IT! on television and at the more than 349 PROVE IT TOUR events conducted around the United States and advertised at www.tundraproveit.com and later "transferred" to www.toyota.com/html/tundraproveit/ .

14. Prior to Defendants' use of Calmese's trademark  TOYOTA nor AMCI had Calmese's authorization to use the phrase PROVE IT and neither of the Defendants' were the first users of the phrase and had no standing to make any legitimate ownership claims, Calmese appropriately addressed this matter.  As a natural consequence of these actions, Calmese was able to obtain some fruits of its labor by entering into an Agreement with TOYOTA and AMCI in 2007.

15. On information and belief, for the PROVE IT TOUR,  Toyota spent a big chunk on dealership personnel training – more than for any launch in history by "more

than a factor of five," said TOYOTA.

16. On information and belief, Camry, the previous record holder, TOYOTA trained

    11,000 dealership personnel; and for the "PROVE IT TOUR", TOYOTA trained

    more than 30,000.

17. On information and belief TOYOTA'S Camry launch also had a slogan that was

    researched and used by TOYOTA.

18. Trade journal Advertising Age reported TOYOTA'S advertising spending

    surpassed $100 million; and TOYOTA'S officials will not dispute the figure.

19. On or about February 2007 TOYOTA hit the road with its "PROVE IT TOUR", a

    test drive program using Calmese well-established trade name and trademark

    "PROVE IT!".

20. On February 2, 2007, Brian Smith, TOYOTA'S corporate truck manager

    admitted, "We have a lot to prove."

21. This is an action for a request for breach of agreement, common law trademark

    infringement, request for permanent injunction, deceptive advertising under

    Arizona law, common law unfair competition, state statutory trademark

    infringement and dilution, negligence, fraud and conspiracy.

## II.    THE PARTIES

22. Plaintiff Michael D. Calmese is an individual duly organized and existing under

    the laws of the State of Arizona and the rules that govern the USPTO, having its

    domicile at 3046 N. 32nd Street Unit 321, Phoenix, Arizona, 85018.  Michael D.

Calmese owns and uses the "PROVE IT!" trademark and various derivations thereof that it uses in connection with numerous goods and services it has made commercially available since 1995. Those goods and services have included 1) producing and distributing merchandise in the form of, including but not limited to, apparel and advertisements 2) providing entertainment services by producing, distributing and performing sound recordings, musical works and live events, operating a fan club, 3) developing radio and television jingles to promote the PROVE IT! brand. In an effort to protect those marks Michael D. Calmese takes action to prevent the infringement, dilution, disparagement, and misappropriation of its marks.

23. Defendant, Toyota Motor Sales, U.S.A., Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 19001 S. Western Avenue, Torrance, California 90501. TOYOTA maintains one or more offices within this judicial district, and engages in systematic activities in this judicial district and are responsible for the damages complained herein.

Defendant AMCI Marketing, Inc. ("AMCI"), is a corporation organized and existing under the laws of California with its principal place of business at 4755 Alla Road, Marina Del Rey, CA 90292 and has been authorized by TOYOTA to use their respective trademarks for commercial purposes, to promote TOYOTA and its PROVE IT TOUR and are also responsible for the damages complained herein.

### III.   JURISDICTION AND VENUE

24. This Court does have subject matter jurisdiction over all of the claims in the
    action pursuant to 28 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. §1338 (a) and
    (b), and the Court has supplemental jurisdiction under 28 U.S.C. § 1367.

25. Calmese's claims for declaratory and injunctive relief are authorized by 28 U.S.C.
    §§ 2201 and 2202; by Rules 57 and 65 of the Federal Rules of Civil Procedure,
    and by the general legal and equitable powers of this Court.

26. This Court does have personal jurisdiction over Michael Calmese pursuant to
    CPLR 301 and 302, as it does transacts substantial business in this District,
    among others, and caused Calmese harm in the Arizona District.

27. This Court has jurisdiction over the person of Defendant TOYOTA by
    virtue of its conducting business in the State of Arizona.

28. This Court has jurisdiction over the person of Defendant AMCI by virtue of its
    conducting business in the State of Arizona.

29. Venue is proper in the District pursuant to 28 U.S.C. §1391(b) and (c), as a
    substantial part of the events which gave rise to the harm to Calmese occurred in
    this District and Defendants' TOYOTA and AMCI have multiple business
    locations in Arizona.

### IV. <u>COUNTS COMMON TO ALL CLAIMS</u>

30. Prior to 1996, there were not brand items with "PROVE IT" printed on them, nor
    were there any marketing or advertising campaigns to promote the mark.  Indeed,

the phrase had not been trademarked.

31. On August 5, 1996 Calmese filed his trademark application for the mark PROVE IT! with the USPTO. Calmese then made "PROVE IT!" popular by arbitrarily attaching the term to its goods and services and creating an inherently distinctive mark or secondary meaning.

32. On November 10, 1998 Calmese's PROVE IT! mark was registered with the USPTO, Registration No. 2,202,454.

33. On December 29, 1998 NIKE Inc., responded to one of Calmese's letters regarding a partnership or licensing of the phrase PROVE IT! with Nike. A true copy is attached as **Exhibit B**. Also attached as **Exhibit B1 and B2** are copies of the 2008 NIKE PROVE IT TEE showing that even NIKE had a change of mind about using the PROVE IT Trademark and it also shows that the popularity of Calmese PROVE IT! Trademark is and was gaining popularity among multi-million dollar companies like Nike. As a result of the Michael D. Calmese litigation with NIKE in the matter Michael D. Calmese v. NIKE Inc., 06-CV-1959 Nike swore under oath that it would not use the, "Prove It advertisement again." and Nike's motion for attorney's fees for nearly $200,000.00 (two hundred thousand dollars) was denied, accordingly!

34. On April 26, 1999, REEBOK Ltd., responded to one of Calmese's letters regarding a partnership or licensing of the phrase PROVE IT! with Reebok. A true copy is attached as **Exhibit C**. Also attached as **Exhibit C1, C2 and C3** are true and accurate copies of the 2007 ADIDAS/REEBOK TEES again, showing that as a direct result of Calmese's hard work marketing and promoting his

PROVE IT! Trademark making it popular, major companies like adidas, Nike and Toyota naturally want to use it. This Court should note that in the above cases with NIKE and adidas, the Court ruled in both cases that because of the size of these mult-million dollar companies, their use was in bad faith. Likewise, Calmese contends, this Court should also find TOYOTA's use was and is in bad faith due to their neglect in doing the proper trademark research prior to infringing Calmese trade name and trademark in their "biggest launch" ever, reportedly spending more than $100,000,000.00 (one hundred million dollars) marketing the "PROVE IT TOUR" illegally using Calmese's PROVE IT! Trademark.

35. Calmese obtained various other trademarks (herein the "PROVE IT! Trademarks") and entered into license agreements with manufacturers and distributors of merchandise by which such companies are or were licensed to use the "PROVE IT!" Trademarks in connection with authorized goods and services.

36. Calmese entered into numerous agreements for use of the "PROVE IT!" Trademarks with TOYOTA and the NBA to name a few. The Court should note that Calmese is bound in certain agreements not to make any mention of the party or any settlement agreement terms.

37. As a direct result of the no mention clause of the terms in the TOYOTA, AMCI Agreement Calmese is forced to file **Exhibit D**, under seal at a later time.

38. On or about March of 2000 the NBA's Phoenix Suns entered into a license agreement to use the PROVE IT! Trademark for advertisements. Attached as **Exhibit F**, is a true copy of the PROVE IT! advertisement with the Phoenix Suns.

Also attached as **Exhibit G** is a true and accurate copy of the NBA's Phoniex

Suns Licensing Agreement, in part.

39. During 2007 Calmese entered into an Agreement with TOYOTA to use

Calmese's PROVE IT! Trademark.

40. It was agreed to by both Calmese and Defendants' that the 2007 Agreement

would be extended to December 31, 2009.

41. Attached as **exhibits L2, L3, L4, L5, L6, L7, L8, L9, L10 and L11** are true and

accurate copies of the PROVE IT TOUR campaign, which Plaintiff obtained in

March of 2010 off of the www.Toyota.com website.

42. Calmese contends that as a direct result of Defendants' goods and services

admittedly being advertised past the deadline well into March of 2010, violates

the 2007 Agreement and the December 31, 2009 extended deadline.

43. As a direct result of Defendants' Breach of the 2007 Agreement with Plaintiff,

Calmese business has suffered significant damage.

44. In January of 2010 Calmese was forced to vacate his plans for the, "FORD

PROVE IT" campaign because he had misrepresented to FORD representatives

that the TOYOTA PROVE IT TOUR was to end on December 31, 2009.

45. By Defendants' not honoring the April 2007 Agreement and using Calmese's

trademark past the agreed December 31, 2009 deadline, has made Calmese look

untruthful damaging his reputation.  Not to mention the negative image Defendant

TOYOTA now has as a direct result of them being untruthful about some of their

faulty automobiles.

46. Defendants' in the most recent past have been fined for some serious violations of law while at the same time while making an unwanted association and/or affiliation with Calmese.

47. Toyota's former Vice President of Public Affairs was quoted as saying, "The time to hide on this one is over. We need to come clean." Referring to the acceleration and brake problems that have warranted numerous lawsuits to be filed against Toyota. Moreover, Toyota has been ordered to pay and some HUGE fines, accordingly.

48. By TOYOTA breaking the law and not coming clean about its acceleration and brake problems, Calmese has potentially been damage by the association created by Plainitiff's and Defendants' 2007 Agreement.

49. In December of 2009 Defendants' lied to Plaintiff by stating that Defendants' would not be interested in using Plaintiff's trademark in 2010 causing Plaintiff defame his reputation with the general public and FORD.

50. Defendants' further violated Calmese by fraudulently representing that the tundraproveit.com website was shut down, when in fact the website had only been secretly transferred as Defendants' attempted to pirate the use of Calmese trade name and trademark on the www.Toyota.com website at www.Toyota.com/html/tundraproveit/ . Again, see **exhibit Q1, Q2, Q3** and **Q4**, as Defendants' confirmed their breach and fraud in writing.

51. On March 23, 2010, Defendants' sent Calmese yet another email, surprisingly, claiming that the events admitted to in exhibits Q1, Q2, Q3 and Q4 did not take

place.  Attached as **Exhibit Q5** is a true and accurate copy of AMCI's fraudulent and misleading email.

52. Defendant TOYOTA is involved in numerous other lawsuits that will have a damaging effect on their reputation and this could potentially damage anyone associated,  affiliated or connected with TOYOTA.

53. Plaintiff contends that as a direct result of TOYOTA breach, has damage Calmese reputations because of the alleged deaths and imprisonment caused by TOYOTA's product.

54. This is not a good time or Plaintiff's desire to be associated with Toyota and their growing unpopularity surrounding their automotive problems that have been widely reported in the news.

55. The quality and style of the officially licensed "PROVE IT!" Merchandise and Services are controlled and monitored by Plaintiff.  PROVE IT! Merchandise has been advertised for sale through a wide variety of channels, including over the radio, television and in various catalogs and websites.  The Court can simply go to www.USAPROVEIT.com to see Plaintiff's website confirming Calmese's use of his PROVE IT! Trademark and claims.

56. Entities holding and who have held licenses to use "PROVE IT!" Trademarks have invested significant amounts of capital and have devoted substantial amounts of time and effort to the production, marketing and promotion of merchandise bearing the "PROVE IT!" Trademarks and have established a significant consumer demand for these items through such efforts.  Consumers readily identified merchandise bearing the "PROVE IT!" and/or "TUNDRA PROVE IT"

marks as being sponsored and approved by Michael D. Calmese.

57. Plaintiff derives income in the form of royalty payments and licensing fees from its Licensees from the sale and/or use of licensed merchandise or licensed advertisements bearing the "PROVE IT!" Trademarks. Calmese also derives income from consumers/customers from direct sales of merchandise and services bearing the "PROVE IT!" Trademarks.

58. TOYOTA has projected an affiliation or relationship with Plaintiff as a result of their unauthorized use of Plaintiff's trademark and image Michael Calmese has been developing since 1997!

59. During the 2007 TOYOTA "PROVE IT TOUR" Calmese discovered that Denfendants' were using his trademark in an ad campaign. Again, see Exhibits L1-L12. The Court should note the TOYOTA PROVE IT TOUR campaign is a "Xerox" of Calmese's image and buiness.

60. Plaintiff did not give the TOYOTA permission to use the mark "PROVE IT" Trademark past the agreed to December 31, 2009 deadline.

61. On January 12, 2010, Calmese sent a cease and desist letter to AMCI. The following is an excerpt from the January 12, 2010 Cease and Desist Letter (attached as **Exhibit "H"**):

*"Due to the undeniable visual similarities between your use of the term PROVE IT and PROVE IT!®, your continued use beyond our Agreement will likely cause consumer confusion, if it hasn't already. I believe such use constitutes, at the minimum, an infringement and dilution of SPORTSWEAR's trademark rights*

*pursuant to Sections 15 U.S.C. §1125(a) and 15 U.S.C. §1125(c) of the Lanham Trademark Act and breach of agreement."*

62. During the months of January, February and March 2010, AMCI on behalf of its partner TOYOTA, wrote at least two letters in response to Plaintiff's allegations. A true and accurate copy of two of AMCI's responses are attached as **Exhibit Q and S.**

63. More importantly, the AMCI wrote the January 12, 2010 email admitting it had breached the parties agreement due to an "oversight". The following is an excerpt from AMCI'S January 12, 2010 letter (a true and accurate complete copy is attached as **Exhibit S**):

    *"We have been notified by Toyota IT Department that the web site is scheduled to be closed down permanently on January 21, 2010."*

64. Defendants' January 21, 2010 email is a confirmed breach of agreement.

65. Prior to filing this Complaint, Calmese received an email from Defendant AMCI on March 16, 2010. The following is an excerpt from the Defendants' March 16, 2010 email (a true and accurate complete copy is attached as **Exhibit "Q"**):

    *"I have been told by Toyota on January 15, 2010 that the Toyota Prove it Web Site is completely shut down."*

66. On March 18, 2010 AMCI sent an email to Calmese. Attached as **Exhibits Q1 and Q2** are true and accurate copies of AMCI's emails "falsely" claiming that the PROVE IT TOUR webpage "doesn't exist", implying that there was no breach.

67. Then on the next day March 19, 2010, AMCI changed its mind, again, and sent

another email to Calmese.  Attached as **Exhibit Q3** is a true and accurate copy of AMCI's email claiming that the PROVE IT TOUR webpage was "accidentally restored.", implying there was in fact a breach.

68. Calmese contends the PROVE IT TOUR website was never "restored" and that Defendants' willfully, knowingly, and maliciously "transferred" the "PROVE IT TOUR" webpage from " www.tundraproveit.com" to "www.toyota.com/html/tundraproveit/". Calmese contends Defendants' fraudulently misinformed Plaintiff of this transfer.

69. On March 19, 2010, Microsoft Certified consultants characterized Defendants' PROVE IT TOUR website as being "hidden".

70. On March 19, 2010, Calmese wote TOYOTA and AMCI in response to their misrepresentations and hidden website. Attahced as **Exhibit Q4** is a true and accurate copy of Calmese's March 19, 2010 response.

71. On or about April 1, 2010 Defendant's attorney, Douglas Sprinkle, called Plaintiff by phone and threatened to sue Calmese for, "peddling empty license agreements." and for accusing the Defendants' of breaching our Agreement.

72. To settle this dispute, Defendants' emailed Calmese the attached Settlement/License Agreement even thou Defendants claim they have completely dropped the "PROVE IT TOUR" campaign.  Attached as E**xhibit Z1**, is a true and accurate copy of Defendants' insulting Settlement Agreement/License Agreement.

73. Attached as **Exhibit Z2**, is a true and accurate copy of one of Plaintiff's responses

to Defendants bogus Settlement Offer.

74. The following is an excerpt from Defendants' April 16, 2010 email (a true and accurate complete copy Attached as **Exhibit Z11):**

"I REALLY DON'T CARE ONE WAY OR THE OTHER."

75. Finally, on April 16, 2010, Calmese sent Defendants' his last email to Defendants' since it was now clear Defendants' "don't care". Attached as **Exhibit Z9** is a true and accurate copy of Plaintiff's last email.

76. During January 2010 Plaintiff had plans and a potential business deal with FORD with the understanding that the TOYOTA PROVE IT TOUR would end as agreed to but, due to Defendants' breach of the 2007 Agreement Calmese was forced to cancel his business dealings with FORD. Attached as **Exhibits W1-W8,** are true and accurate copies of Plaintiff meeting with FORD prior to discovering that TOYOTA was definitely in breach of the 2007 Agreement. Exhibits W1-W8 proves that Plaintiff indeed had dealings with FORD as stated earlier.

77. Subsequently, as a direct result of Defendants' breach, Calmese's potential deal with FORD was compromised by Defendants' deceit and lies because Calmese had communicated false information to FORD and his marketing staff concerning Defendants' December 31, 2009 deadline date. This has naturally caused significant trust issues concerning Calmese's control over his Intellectual Property.

78. Over the years Calmese has actively sought to control the artistic and trade values of the commercial use of the PROVE IT! phrase and keep it "homespun". Calmese business has also actively sought to protect the integrity of its use.

Typically that would result in a cease and desist letter if an unauthorized user refused to cooperate and enter into a reasonable license agreement or settlement. However, on occasion Calmese was required to go father to protect its interests and it rose to the occasion each time.

79. On one such occasion involved the Goodwill Games in New York "Where The World's Best PROVE IT." Subsequently, in 1998 due to Calmese cease and desist letter Ted Turner and the Goodwill Games Inc., were forced to abandon there claimed trademark rights to PROVE IT with the USPTO and pay Calmese an undisclosed settlement. Attached as **Exhibit "U"** is a true and accurate copy of the Goodwill Games Inc., "WHERE THE WORLD'S BEST PROVE IT" advertisement.

80. Another occasion involved Eastbay Inc., in a New York District Court. Subsequently, Eastbay Inc., paid Calmese an undisclosed settlement in the matter EASTBAY Inc. v. MICHAEL D. CALMESE due to their misappropriation of Calmese's PROVE IT! Trademark. Again, see Eastbay Inc., advertisement attached as exhibit W. Attached as **Exhibit T** is a true and accurate copy of Calmese Case History involving the PROVE IT! mark. The Court should note that Calmese has been involved in more than 10 lawsuits concerning PROVE IT! and Calmese has won more than half if not all these cases in one form or another.

## V. COUNT 1: REQUEST FOR DECLARATORY RELIEF

81. Calmese hereby realleges and incorporates by reference the allegations of paragraphs 1-80 of this Complaint.

82. Pleading further, Calmese seeks on behalf of himself a declaration of the Court, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., that:

    a.   Calmese was the first to use "PROVE IT!" in commercial context;

    b.   Calmese first used "PROVE IT!" in November of 1995;

    c.   Calmese first trademarked the phrase "PROVE IT!" in 1996 with the USPTO;

    d.   Calmese acquired exclusive rights to use "PROVE IT!" or any of its derivations;

    e.   Calmese obtained several other trademarks for the pharse "PROVE IT!";

    f.   As a result of the exploitation of the "PROVE IT!" name and/or trademark therein and otherwise, Calmese has acquired a substantial and valuable goodwill therein;

    g.   The "PROVE IT!" name and/or trademark is inherently distinctive or has acquired a secondary meaning, and Calmese's Trademarks themselves have established a meaning distinct from any prototypes on which they may have been based;

    h.   On one or more occasions after Calmese trademarked the phrase

PROVE IT!, Calmese "successfully" disputed or contested, directly or indirectly numerous third party use of the phrase "PROVE IT!" (ie. TOYOTA Toyota Tundra PROVE IT slogan and website), GOODWILL GAMES(Where The World's Best PROVE IT slogan), PROCTOR & GAMBLE(1-800-PROVE IT phone number) and the PHOENIX SUNS(Got Game Prove It! slogan);

i.  Calmese has the right, through first usage, of Plaintiff's registration filed in 2007;

j.  Calmese has the right, through first usage, of Plaintiff's registration filed in 1996;

k.  Calmese never abandoned the "PROVE IT!" Trademark;

l.  Calmese continuously used the "PROVE IT!" since 1995;

m. The phrase "PROVE IT!" or any of its derivations is unique and original and Calmese is the owner thereof;

n.  The phrase "PROVE IT!" Registration No. 2,202,454 is a valid registered trademark with the United States Patent Trademark Office, owned by Michael D. Calmese;

o.  Calmese's territory to use the "PROVE IT!" Trademark is the world; and

p.  Defendants' acts and practices have directly and proximately caused damages to Calmese.

83. Calmese also respectfully requests that this Court award its reasonable and

necessary attorney fees under 28 U.S.C. §§ 2201, et seq.

## VI.   COUNT 2:  BREACH OF AGREEMENT

84. Calmese hereby realleges and incorporates by reference the allegations of
paragraphs 1-83 of this Complaint.

85. As set forth above, an unnamed party entered into a contract with Calmese in
2007.  Pursuant to the terms of April 2007 Agreement, which can not be
mentioned at this time, Calmese was paid valuable consideration and in return
AMCI and TOYOTA represented and warranted that it would not use the
"PROVE IT!" Trademark past December 31, 2009 deadline.  Plaintiff's Cease
and Desist Letter and Notice Of Claim sufficiently notified Plaintiff's of their
violations.  The Court should note that Defendants' elected to ignore Calmese's
December 11, 2009 notification warning Defendants' that our Agreement was
set to expire at the end of that month.  Attached as **Exhibit R and R1,** are true
and accurate copies of Calmese's notification with the U.S. Certified mailing
receipt that was sent to Defendants' in *good faith* to avoid this kind of litigation.

## VII.   COUNT 3: DECEPTIVE ADVERTISING UNDER ARIZONA LAW

86. Calmese hereby realleges and incorporates by reference the allegations of
paragraphs 1-85 of this Complaint.  As set forth above, the Defendant made
misleading or false factual representations in the 2007 Agreement concerning the
term of use of the phrase "PROVE IT" in the "TUNDRA PROVE IT" slogan.

87. Defendant made the false or misleading statement in a "commercial advertising or

publication" to promote the goods or service or otherwise further their own interests.

88. Calmese reasonably believed it was likely to suffer and in fact did suffer damages from the false or misleading representations, especially since Defendants' entered into a legal and binding agreement.

89. The aforesaid acts of Defendants' have caused great and irreparable harm and damage to Calmese and unless permanently restrained by this Court, said irreparable injury will continue.

90. Through this action Calmese seeks all of the available damages and remedies available under the law for himself.

## VIII.   COUNT 4:  TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

91. Calmese hereby realleges and incorporates by reference the allegations of parapraphs 1-90 of this Complaint.

92. Calmese began to use the "PROVE IT!" Trademarks on or about November 1995 as a trademark for goods and services.

93. The Defendant began to use the mark after that date while Calmese was selling or distributing its goods.  The Defendant use of the mark "PROVE IT" was without consent of Calmese.

94. The "PROVE IT!" Trademarks are inherently distinctive and/or have acquired secondary meaning.

95. As set forth above, the Defendant's have used in interstate and intrastate commerce "PROVE IT" on or in connection with goods or services and said use:

    a.  is likely to cause confusion, or to cause mistake, or to deceive, or

    b.  misrepresents the nature, geographic origin of their goods,

        services, or commercial activities.

96. The unauthorized us of "PROVE IT" by Defendants' for the "TUNDRA PROVE IT" campaign, (on clothing, banners, signs, in advertisements and on the internet), has caused public confusion as to ownership, association, sponsorship or affiliation, and the Defendant intended to cause this confusion by engaging in the activities described above.

97. Defendant's use of "PROVE IT" in the "TUNDRA PROVE IT" slogan destroys or interferes with Calmese's exclusive right to use that mark for goods and services.

98. The threat of the loss of Calmese's right to control the use of "PROVE IT!" and the reputation of its goods and/or services is real and substantial.

99. The Defendant's acts described herein have injured, or likely will injure, Calmese's business reputation, and good will, and unless enjoined will continue to do so, all to Calmese's irreparable harm.

100.    The Defendant's unauthorized use of the Plaintiff's distinctive "PROVE IT!" mark in the phrase "TUNDRA PROVE IT" constitutes trademark infringement in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

## IX.  COUNT 5:  STATE STATUTORY TRADEMARK INFRINGEMENT AND DILUTION

101.     Calmese hereby realleges and incorporates by reference the allegations of

the paragraphs 1-100 of this Complaint.

102.     As set out above, the Defendant's have used without the consent of

Calmese reproductions, counterfeits, copies, or colorable imitations of the

"PROVE IT!" Trademarks in connection with the sale, offering for sale, or

advertising of goods or services on or in connection with which such use is likely

to cause confusion or mistake or to deceive as to the source of origin of such

goods or services.


103.     As set out above, the Defendant's have reproduced, counterfeited, copied

or colorably imitated the "PROVE IT!" Trademarks and have applied such

reproduction, counterfeit, copy or colorable imitation  to labels, signs, prints,

packages, wrappers, receptacles, or advertisements intended to be used upon or in

conjunction with the sale or other distribution in this State of such goods or

services past the due deadline.  Again, see Exhibits L1-L12.

104.     As set out above, the "PROVE IT!" trademarks have a high degree of

distinctiveness and are widely recognized by the general consuming public of the

United States and around the world, and have been continuously used in

connection with advertising and sales on a national scale in various channels of

trade by Calmese for almost two decades.

105.    Defendants' adopted the mark after Calmese's Trademarks became well-recognized and used said mark in commerce in ways set forth above that caused, or will likely cause, dilution of the quality of reputation of Calmese's "PROVE IT!" Trademarks and diminished the capacity of the mark to identify and distinguish the goods and services of Calmese.

106.    As a result of the above, the Defendant's are liable herein to Calmese for any or all of the remedies provided, including the recovery of profits and damages since the acts were committed with knowledge that such marks are intended to be used to cause confusion or mistake or to deceive or dilution.

107.    The aforesaid acts of Defendant constitute trademark infringement and dilution in violation of Arizona Revised Statutes.

108.    The aforesaid acts of the Defendant, have been intentional, willful and in bad faith.

109.    Through this action, Calmese seeks all of the available damages and remedies available under the law for himself.

## X. COUNT 6:  UNFAIR COMPETITION

110.    Calmese hereby realleges and incorporates by reference the allegations of paragraphs 1-109 of this Complaint.

111.    The aforesaid activities of the Defendant constitute the use of the words, terms, names, symbols and devices and combinations thereof, false designations of origin and false and misleading representations of fact that are likely to cause,

and have caused, confusion or to cause, and have caused, mistake or to deceive as to the affiliation, connection or association of the Defendant with Calmese or as the origin, sponsorship or approval of the Defendant's goods, services or other commercial activities by Calmese.

112.    The aforesaid activities of Defendant constitute the use of words, terms, names, misleading representations of fact that in commercial advertising or promotion misrepresent the nature, characteristics or qualities of Defemdants' goods, services or other commercial activities.

113.    The aforesaid activities of Defendants' constitute false and misleading descriptions or representations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and Arizona law.

114.    The aforesaid activities of Defendant amount to an unfair competition against Calmese in that the Defendants actions interfered with the actual and prospective business relationships and said wrongful conduct was undertaken to cause Calmese to lose the opportunity it carefully positioned itself to enjoy.

115.    The Defendants' facilitated the aforementioned activities by using a mark nearly identical to Plaintiff's trademark and claiming it as their own.

116.    The aforesaid acts of Defendant have caused and are causing great and irreparable harm and damage to Calmese and unless permanently restrained by this Court, said irreparable injury will continue.

117.    Through this action, Calmese seeks all of the available damages and remedies available under the law for itself.

## XI.  COUNT 7:  FEDERAL DILUTION

118.     Calmese hereby realleges and incorporates by reference the allegation of paragraphs 1-117 of this Complaint.

119.     The aforesaid acts of the Defendants' constitute dilution of the distinctive quality of the well-established and recognized "PROVE IT!" Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 11259(c).

120.     The aforesaid acts of Defendants' have been intentional, willful and in bad faith.

121.     The aforesaid acts of the Defendants' have caused and are causing great and irreparable harm and damage to Calmese, and unless permanently restrained by this Court, said irreparable injury will continue.  For example, because Defendants' are still using the "PROVE IT!" mark as of today's date, someone or a business could mistaken Defendants use of Calmese's "PROVE IT!" phrase as an open invitation to infringe Calmese's trademark.  If it has not already happened.

122.     Through this action, Calmese seeks all of the available damages and remedies available under the law for himself.

## XII. COUNT 8:  FEDERAL COMMERCIAL AND PRODUCT DESPARAGEMENT

123.     Calmese hereby realleges and incorporates by reference the allegations of paragraphs 1- 122 of this Complaint.

124.    The aforesaid acts of the Defendants' have caused and are causing great and irreparable harm and damage to Calmese and unless permanently restrained by the Court, said irreparable injury will continue.

125.    The continued use of the mark "PROVE IT" past the agreed deadline and the statements the Defendants' have made to the public and elsewhere about Calmese's interest in and ability to own or control the "PROVE IT!" Trademarks were false and harmful to Calmese's economic interest and to the character of his business.

126.    The Defendants' knew or should have known that their breach of our agreement would have a detrimental impact on Calmese.

127.    The Defendants' breached the Agreement with the intent to interfere with Calmese's ability to control or own the "PROVE IT!" Trademarks. This breach was made without any privilege to do so.

128.    As a proximate result of Defendants' misconduct, Calmese has suffered damages.

129.    Because Defendants' action were malicious and/or grossly negligent, Calmese is also entitled to punitive damages.

130.    Through this action, Calmese seeks all of the available damages and remedies available under the law for himself.

## XIII. COUNT 9: NEGLIGENCE

131.    Calmese hereby realleges and incorporates by reference the allegations of paragraphs 1-130 of this Complaint.

132.   The representation made by the Defendants' publicly, privately and to Plaintiff that the "PROVE IT TOUR" and would completely be shut down after December 31, 2009 contained inaccurate, false, and misleading information.

133.   Due to the binding Agreement of the parties, the Defendants' had a duty to exercise reasonable care when making representations concerning the term of the "TUNDRA PROVE IT TOUR".

134.   The Defendants' failed to exercise reasonable care or competence when making these misrepresentations.

135.   As described above, Calmese was poised to enter into substantial contracts with companies and professional athletes that would naturally want to capitalize on the widespread popularity of the "PROVE IT!" Trademarks.  Again, goto Plaintiff's website at www.USAPROVEIT.com or www.TRUELOGOFAN.com to see the popularity Plaintiff is talking about.

136.   Due to the confusion created as to the continued use of the www.TUNDRAPROVEIT.com and www.TOYOTA.com/html/TundraProveIt/ websites potential opportunities were and are lost.

137.   As a proximate result of this negligent conduct, Calmese has sustained damages.

138.   The Defendants' actions were willful and wanton, and Calmese is entitled to punitive damages.

139.     Through this action, Calmese seeks all of the available damages and
         remedies available under law for himself.

### XIV. COUNT 10:  FRAUD

140.     Calmese hereby realleges and incorporates by reference the allegation of
         paragraphs 1-139 of this Complaint.

141.     As set out about, Calmese reserves the right to amend this paragraph
         pending a more in depth investigation concerning TOYOTA'S biggest
         launch every that utilized Calmese's "PROVE IT!" trademark in the
         slogan "TUNDRA PROVE IT".

### XV.     COUNT 11:  CONSPIRACY

142.     Calmese hereby realleges and incorporates by reference the allegation of
         paragraphs 1-141 of this Complaint.

143.     As set out about, Calmese reserves the right to amend this paragraph
         pending a more in depth investigation concerning TOYOTA'S biggest
         launch ever, spending over $100 million dollars using Calmese's
         trademark "PROVE IT" in Toyota's slogan "TUNDRA PROVE IT".

### XVI.   COUNT 12:  ATTORNEYS FEES AND COSTS

144.     Calmese prays for recovery from Defendants' of all reasonable attorney
         fees and all cost of this action, as allowed under law.

### XVII. COUNT 13:  INTEREST

145.    Calmese seeks prejudgment interest and post-judgment interest in the maximum amounts allowed by law.

## XVIII. COUNT 15:  JURY DEMAND

146.    Calmese requests a trial by jury.

## XIX.   COUNT 16:  CONCLUSION AND PRAYER

147.    WHEREFORE, Calmese respectfully requests that Defendants' be cited and required to appear herein and that after a trial on the merits a judgment be entered as follows:

a.  That Calmese obtain an order enjoining the Restrained Parties from:

i.   declaring that the phrase "TUNDRA PROVE IT" is not a valid trademark;

ii.  sending cease and desist letters to Calmese who is using the trademark "PROVE IT" on inner labels in T-shirts and in advertisements;

iii. instructing individuals and entities using the "PROVE IT!" marks and "TUNDRA PROVE IT" marks to cease using same;

iv.  interfering with or thwarting the "PROVE IT!" marks by refusing to act in good faith with respect to the "TUNDRA PROVE IT!" Trademarks;

v.      further engaging in manipulative business strategies designed

to interfere with Calmese's business relation, disparage

Calmese's economic interests, and damage Calmese's ability

to negotiate with others to use the "PROVE IT!" Trademarks;

vi.     taking any action or making any statements that are adverse

to Calmese's interests  in the "PROVE IT!" Trademarks;

vii.    destroying, removing, or secreting documents, record and

other information related to the claims and allegations set

forth in this lawsuit;

viii.   denying the Defendants' exclusive right and title to the

"PROVE IT"  mark and all derivations thereof;

ix.     denying that Defendants' have the right, through first usage,

to the "PROVE IT" Trademarks;

x.      denying that Calmese's territory for the "PROVE IT!"

Trademarks and all derivations thereof includes the United
States;

xi.     using on or in connection with the production, manufacture,

advertisement, promotion, displaying for sale, offering for

sale, or distribution of any articles of merchandise, or for any

purposes whatsoever, the "PROVE IT!" Trademarks or any

colorable imitations thereof;

xii.    using in connection with the production, manufacture,

advertisement, promotion, displaying for sale, offering for

sale, sale or distribution of any articles of merchandise, any

combination of identifying designations of PROVE IT! or any colorable imitations of any of the above;

xiii.    representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or likely to cause confusion, mistake or to deceive purchasers into believing that Restrained Parties products and services originated with or are associated, affiliated or sponsored by Calmese; and

xiv.    using any mark in a manner so as to cause the dilution of the distinctive quality of the well-established "PROVE IT!" Trademarks.

b.   That Calmese recover all profits derived by Defendants' from the "PROVE IT!" Trademarks or any mark confusing similar to it;

c.   That Calmese recover the diminished value of the "PROVE IT!" marks;

d.   That Defendants' and those controlled by Defendants be required in accordance with 15 U.S.C. § 1118, to recall and deliver up to the Court for destruction all merchandise and advertising material that bears simulations of the registered trademarks of Calmese, and all advertisements, packages, containers, labels, signs, prints, wrappers, binders, covers and all advertisements that are, or that embody, any reproduction copy or colorable imitation of Calmese's registered trademarks and all plates, molds, and other means of making the same;

e.  That Calmese recover its damages sustained as the result of
    Defendants' federal trademark infringement, unfair competition
    and dilution and that the Court exercise its discretion and enter a
    judgment for such additional sums as the Court shall find to be
    just, according to the egregious nature of the acts of Defendants';

f.  That Calmese have and recover treble damages under 15 U.S.C.
    § 1117 by reason of the willful and deliberate acts of federal
    trademark infringement by Defendants';

g.  That Calmese have and recover double damages under Arizona
    law by reason of Defendants' acts of <u>deceptive advertising</u>;

h.  That Calmese have and recover punitive damages under Arizona
    law in the amount of twice the combined total of Calmese actual
    loss by reason of Defendants' acts in violation of Arizona state
    law;

i.  That Calmese have and recover damages by reason of
    Defendants' acts of common law tradeamark infringement,
    disparagement and unfair advertising;

j.  That Defendants' be directed to file with this Court and to serve
    upon Calmese within thirty (30) days after service upon
    Defendants' of this Court's injunction issued in this action, a
    written report by Defendants under oath setting forth in detail the
    manner in which Defendants' have complied with the injunction;

k.  That Defendants' be required to account to Calmese for the

profits arising out of their unlawful activities;

l.   That Calmese recover prejudgment interest and post-judgment

interest;

m.  That Calmese have and recover their reasonable attorneys' fees

pursuant to 15 U.S.C. § 1117 and Arizona law;

n.   That Calmese have and recover their costs and disbursements

herein; and

o.   That Calmese have such other and further relief and the Court

may deem just and proper.

DATED:  April 19, 2010

Respecfully submitted,

Michael D. Calmese
3046 N. 32nd Street #321
Phoenix, AZ 85018
(602)954-9518